Good morning, Your Honors. Good morning, Judge Gould. May it please the Court, Nathan Zazzle on behalf of Petitioner Jose Garcia. When the DHS places an immigration hold or detainer on an inmate at a county jail, that is the functional equivalent of a federal arrest because it prevents that inmate from being released when the state authorities have authorized the release. Just like any arrest, this detainer, commonly known as an immigration hold, must be supported by probable cause. Now, the placing or maintenance of an immigration detainer is a seizure. It's a seizure of the body and must comply with the Fourth Amendment. The county jails – What was wrong with what authorities did? There was an outstanding detainer for Jose Luis Garcia-Garcia, correct? Right. That – so he was initially arrested in Contra Costa County by the police. He was held for several weeks as they attempted to extradite him to Los Angeles. You and I are going to get a lot better if you respond to my questions. Okay. What was wrong with the detainer in putting him into custody? That detainer was based on a case of mistaken identity. They thought he was a different Jose Garcia who was the subject of a murder warrant. They didn't believe who he was. They did not believe he was who he said he was. So he spent several weeks in jail. He was cleared of that warrant in Los Angeles. We understand that. But the – he showed up at the police station for reasons unrelated to his immigration status, correct? Correct. Voluntarily gave his name? Yes. No one coerced him to give his name? That's correct. And they put his name in the system, and boom, there's an INS detainer for that name, correct? For that name. Okay. Now, is there something on a detainer that, in addition to a name like an A number or a date of birth or a cross-reference to fingerprints or something like that? No. In this case, the DHS did not provide the detainer. In other detainers I've seen, they're very basic form. They would not contain that kind of information? Not that I've seen. So as far as authority knew, the Jose Luis Garcia Garcia they encountered was the person on the detainer? They knew that there were maybe 11 people with that same name and date of birth. So they say you might be the person who wanted for murder and presumably was a criminal alien, because that person also had problems with immigration. So not only was the name the same, it was the exact same date of birth? Right. Apparently it's a common name and there were several people with the same date of birth. So they were being gathered, taken to Los Angeles to be cleared, and that's what happened in his case, although they thought he might be the person, obviously. And he was cleared? Yeah. And he was cleared on February 28th in Los Angeles. So my main argument is once he was cleared, he should have been able to walk out of that courthouse in Los Angeles. The detainer was no longer valid because it was a case of mistaken identity. The Federal Government had no longer had a reason to hold him either unless they had probable cause to essentially arrest him, re-arrest him at that point. However, they let a five-day period elapse before they, quote, unquote, apprehended him, and that's the language from the officer in Los Angeles. He was, quote, unquote, apprehended five days later. And I don't see how he could be held for five days when he should have been released five days earlier and this wasn't the person they sought. There's no evidence. Suppose they released him and then DHS agents tracked him down where he lived and served him with a notice to appear. Would there be anything wrong with that? No, there wouldn't. But what I'm saying is wrong in this case is if he had just walked out of the courthouse and a DHS agent was right there, or even if they went up to the bailiff and said, we're taking him off your hands, they would have 48 hours to process him, issue notice to appear, the immigration charges. In this case, they didn't do that. They held him for five days. And I think that that's a function. That's the county that held him for five days. No, Your Honor. He was cleared on February 28th. No, no. But was he released? They didn't release him out of the county jail on that day, did they? Yeah. He was free to go. But did they actually let him out the door? They couldn't because of the immigration. Right. So he was still in the county. He was in custody of the county jail. He was in constructive custody of the Federal government. But he was in custody in the county jail, correct? He was inside the county jail. He physically was until I think 1 a.m. that the following day at 1 a.m. So essentially that night he's transferred to the DHS facility in Los Angeles, and he's held there five days, essentially five days. Okay. So he's held in INS custody for five days? Right. So let me ask you this, though. I still haven't – your claim is based – it's like a Fourth Amendment claim, isn't it, here? Yes. That there is a violation of his Fourth Amendment rights? Yes, Your Honor. So the case law talks about an egregious violation, not just – not just a – Right. Any violation, but an egregious – what is the egregiousness that's bothering you here? So the definition of that is egregious evidence is obtained by a deliberate violation of the Fourth Amendment or by conduct a reasonable officer should have known was a violation. So that's kind of what this Court has boiled down that definition to. In the Martinez-Medina case, which I think came out just after I filed this brief, they also added that courts should look to whether there's a clearly established constitutional right which was violated. And in the cases – in the other cases, the one where the Hispanic men are stopped in the car due to their appearance or the Nigerian-sounding name in those, there's a clearly established rule or the warrantless search of a home. In this case, I think the clearly established rule would be that you cannot detain someone without probable cause for more than 48 hours without – without issuing charges. In the criminal context under McLaughlin, that – the State would be required to basically arraign someone in that context within 48 hours. In this context, they have to be taken before an officer who decides whether or not to issue a notice to appear, which is a formal charging document for immigration. But holding him five days without attempting to – Roberts. Let me ask you, is there – once he's in custody of the INS – Yes. Or wherever it is now. I guess – what is it, ICE? Yeah, ICE. So once he's in custody of ICE, is there a – is there some constitutional rule that says that ICE has to file charges, administrative immigration charges, civil immigration charges against him within a certain period of time? Is there a constitutional rule that says that? Well, what I know – what I know is that there's an immigration manual. No, I'm not talking about a manual. Is there a case grounded on the Constitution that says once an alien is in custody of ICE, and ICE is going to initiate civil removal proceedings, that there is a certain period – the Constitution imposes a certain period of time within which to do that? I don't know of a case, Your Honor, but in the hypothetical you – I mean, in the hypothetical, you could say, you know, a person is arrested, you know, they can't be held indefinitely there. You know, you could file a habeas, obviously, on that. They – My understanding was here. When he was picked up at the clerk's office, when he showed up, I guess to pay a fine or whatever it was, in Contra Costa County. Was it Contra Costa County? Yes. Yes. And he's taken into custody. Nobody challenges that seizure. Right. And I think that was a lawful seizure. Because he had the same name, same date of birth. Right. As the person on the outstanding warrant from L.A., correct? Right. But that – but all that – but all that – that should have evaporated. You know, that – the basis for that detainer essentially evaporated when he was cleared of that warrant. There had to be a seizure. Nobody quarrels with that initial seizure, taking him – taking him into custody.  Nobody quarrels with that. And nobody has raised a challenge as to the length of time that he was in custody in Contra Costa for 11 or whatever number of days it was. It was a long period of time. And there's some quibble back and forth about why that occurred. Right. He gets transferred to Los Angeles, transported down to Los Angeles. Right. Eventually gets in front of a judge in L.A., and they say, oh, mistake. Right. We should let you – you know, there's no basis here. So at that point – at that point, he's essentially arrested – re-arrested by the Federal government there without probable cause, at that moment, that five day. I'm not talking about the several weeks he was held. That's lawful. I'm saying those five days, that was not lawful. And that in itself is an egregious violation. It – the immigrants have the same rights, for example, in a criminal proceeding to have within 48 hours be arraigned. But they didn't – they didn't initiate criminal proceedings against him. They initiated removal proceedings.  But it's the same issue of free – You know, I've taken – I've pressed you on your time. Okay. I'll give you a minute for rebuttal. Okay. Thank you. Good morning, Your Honors. May it please the Court. My name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. Let me address first Petitioner's contention that DHS wrongfully held him for five days before issuing the notice to appear. Actually, the actual time is 48 hours. The regulation at 8 CFR 287.7 subsection D authorizes the Department to request the criminal justice – the criminal enforcement agency to hold an immigrant that they are interested in for 48 hours while DHS decides whether or not they want to – excuse me – to process the alien for a detainer or for other charges, depending on what comes out of their question-and-answer session. What did the DIA rely upon to determine that DHS or ICE had probable cause to arrest? I believe the Board cited Petitioner's turning over of his Mexican ID at the time to Contra Costa County police officers when he was apprehended, when he went in to report  Is that in the record? Yes, it is, Your Honor. The Mexican ID is in the record? Oh, not the record. No, no. The Mexican ID is not in the record, but he did testify. Did they also rely upon his California driver's license? I looked at that, and the Board cited pages 60 and 61 of the transcript. But if you read the transcript, they asked him if it was what kind of ID he had. Was it a driver's license or other kind of ID? And I believe he said a driver's license, no, a Mexican ID. But he didn't elaborate as to what type of Mexican ID it was. Why isn't the ID in the record? It wasn't submitted, Your Honor. It wasn't produced by Petitioner or DHS at the hearing below. How do we know it was produced? It was produced to Contra County, Contra Costa County police officers when he reported. No one made a copy of it? Not that I know of, Your Honor. In this record. So what the BIA relied upon to determine probable cause, we have no way of reviewing. Well, we have his testimony that he provided that information to Contra County, the Contra Costa County police officers. If an agent, any Federal agent, said they had advised someone of their Miranda rights and used a Miranda card and a copy of the card was not in the record, should we be concerned? In a criminal proceeding, Your Honor? Yes. In any proceeding. Well, in immigration proceedings, the Miranda warnings are not really relevant. Using that as an example. Okay. I don't believe that's the case. It's a bit unusual, isn't it? This is something the board said. This is what we rely upon to determine alienage, which has to be determined. It's not a matter of burden. It has to be determined. And we rely upon the fact that he produced some form of Republic of Mexico identification, but it's not in the record. I believe that the board used that information to say that DHS's detainer was justified at that point. Regarding alienage, the burden of proof of alienage at the hearing, the board and the immigration judge both relied on the form I-213. Let's talk about the detainer. Is it in the record? No, it is not, Your Honor. Why is it not in the record? It's – I have never seen it as part of the record in any immigration proceeding. I'm not asking about any other proceeding. I'm asking why it isn't in the record. I don't know, Your Honor. There's no explanation in the record. It wasn't submitted. I mean, this is the whole basis for this series of events that led to him being arrested, detained for several days, and then transported from one facility to another, and we don't have it. That's correct, Your Honor. Wouldn't it be better practice to have it? It may be, but I don't believe that it prejudices Petitioner not to have the detainer in this record, nor would it add anything substantial to the record itself when the key question is his alienage and his removability in removal proceedings. The record does tell us that when he was taken into custody based on the detainer that he was told that there were, what, six other individuals of the same name with the same birthdate? Oh, he wasn't taken into custody based on the detainer, Your Honor. He was taken into custody based on a criminal arrest warrant issued for someone with the same name and birthdate. That was the basis for the detainer, wasn't it? The immigration detainer was placed. But I don't really know if that was the basis was because they thought he was the person that was named in the detainer, in the arrest warrant, or if it was simply because he was an alien with a name and they couldn't find him in the record, in the immigration records. For all I know, they could have issued detainers against all 11, Jose Luis Garcia Garcia's. There were 11 of them? There were 11 of them, Your Honor. Same name and same birthdate? Not all with the same birthdate, but seven of them at least had the same birthdate. And what process was employed to determine that he was not the person named in either the detainer or the arrest warrant? I don't know. He was the person named under the detainer because it was the name and his birthdate. I don't know about the arrest warrant, Your Honor, because I'm not privy to that part of the criminal investigation. What process was employed to determine that this Jose Luis Garcia Garcia wasn't the person named in the murder arrest warrant? I don't know what process that would be, Your Honor, because that's a criminal – that would be in the criminal case and not in the immigration case. How was he judicially cleared? Oh, that was – they submitted the criminal court's judicial clearance. He appeared in Los Angeles County. Yes. But by the time – he finally got down – they finally transported him down to L.A., right? Yes. And eventually he sat in the county jail for a few – I don't know, a week or so. He finally got in front of a judge in L.A. County. Right. And by that time, I imagine he had a public defender and the D.A., and they probably figured out that he wasn't – he wasn't the – he wasn't – he was not the Garcia Garcia on the warrant, the outstanding warrant. I assume – I believe so, Your Honor. But, again, I don't know. Aren't we supposed to – Counsel, if I could ask a question, just to help me understand the practical significance of this. He has – he had a motion to suppress that was denied, right? That's correct. So what evidence – what evidence was it he was trying to suppress? He was trying to suppress the Form I-213, which was prepared by the immigration agents after he was judicially cleared of the criminal charges and transferred into the custody of the Department of Homeland Security. Okay. So assuming if we were to give – I'm not saying we will, but if we were to give him relief and that document was to be suppressed, then the government would have to start over again, right? But couldn't the government proceed against him in a removal proceeding? Yes, they could run his name through their immigration records and independently run – see what other records they have in the database that relate to him in order to initiate removal proceedings, for example, because of the 1999 DUI charge and conviction. So I was really not understanding the significance of this proceeding. He's not seeking damages in this proceeding for being held just to suppression of that form, right? That's correct, Your Honor. Okay. And this is why the – this is the rationale that the Supreme Court articulated when it held in Lopez Mendoza that the exclusionary rule generally should not apply in immigration proceedings. But we – again, we don't know and you don't know and the record does not tell us what process was employed to clear him and why that process could not have been accomplished earlier. Of the criminal charges, Your Honor? I'm obviously not communicating with you. At some point in time, a judge said, you're not the person named in this warrant. Correct? Correct. Okay. Do you know what process led to that conclusion? I don't know, Your Honor. What I'm saying is that that was part of the criminal case, the criminal proceedings, not the immigration proceedings, because the immigration detainer only came in as part of, for example, the police officers could have, once they had his name and his Mexican I.D., contacted DHS, which is – which they're authorized to do under the statute at AIDS. But we don't know that. But we don't know. But again, the DHS – it doesn't have to be a criminal conviction for DHS to say that a detainer is warranted in a particular case. And do you think it would be helpful to reviewing courts like ours to have a more complete record, to know what the process was for clearing him, what the detainer says, whether there was even a Mexican I.D. that existed? It may be more helpful, Your Honor, but I don't think, again, in this case, that it necessarily hurts the government's case or Petitioner's rights with respect to his removal proceeding. I see that my time is up, unless the Court has any further questions. Okay. I'm good. Thank you. Thank you. Thank you. You can have a minute for rebuttal. Just with respect to the issue of whether or not if the motion to terminate was granted, if they could arrest him again, I think that would only be possible if some independent intervening event happened, like he was arrested for something else or ICE found him independently. I don't think they could target him just because this was terminated. I think that would be with prejudice with respect to how they came into contact here. But that's just my two cents. It's not exactly relevant to this argument right now. And I'd just like to state that the issue of why there's no detainer and why there's no evidence of a Mexican ID just goes to the idea that a lot of the DHS makes a lot of assumptions, the assumptions that they can hold someone, the assumption well, he's not this guy, but he's probably another illegal alien. Those are unwarranted. The BIA, the judge, interestingly, gave the testimony of the Petitioner little to no weight. And all of a sudden the BIA says, well, the judge was correct in her conclusion, but the only reason we're going to give to say she was correct is because he said I had a Mexican ID and therefore we're going to assume DHS relied on that. There's no evidence DHS ever saw that, knew about that or anything. Thank you. Thank you. Thank you, counsel. We appreciate your arguments on this case. The matter is submitted.
judges: Hawkins, Gould, Paez